IN THE MATTER OF THE PETITION OF DELBERT BAIN
FOR A WRIT OF HABEAS CORPUS

No. 3295

January 24, 1940.                    98 P. (2d) 477.

*Gordon W. Rice,* for Petitioner.

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, for Respondent.

## OPINION

By the Court, ORR, J.:

The petitioner herein, Delbert Bain, was tried in the Second judicial district court of the State of Nevada, in and for Washoe County, on a charge of assault with intent to kill, and on the 6th day of September 1939, the jury impaneled in said court and cause returned a verdict finding the said Delbert Bain not guilty by reason of insanity. Thereafter the said district court entered its order and judgment, pursuant to section 11015

N. C. L., that said Delbert Bain be confined in the Nevada State Hospital for Mental Diseases until he be regularly discharged therefrom in accordance with law, and pursuant thereto the said Delbert Bain was confined in said hospital. On October 17, 1939, said Bain petitioned this court for a writ of habeas corpus. The writ was issued and made returnable on the 17th day of November 1939, and on said date the superintendent of said hospital for mental diseases duly made his return to said writ, and said cause was orally argued and briefs submitted by respective counsel.

One of the grounds alleged by petitioner in support of his said petition for release was that he was, at the time of filing said petition and for some time theretofore had been, sane. Our finding on this question renders unnecessary a determination of the other questions presented.

This court, in order to make a determination as to whether or not said petitioner was sane, deemed it necessary that evidence relative thereto be submitted to it, and on the 20th day of November 1939, appointed Charles W. Guthrie as referee before whom such evidence could be taken. Pursuant thereto, there was produced before said referee certain witnesses, their evidence taken, transcribed, and the record thereof filed in this court. There has also been filed herein a transcript of the evidence taken at the trial of said Bain in said district court.

After the filing of said transcripts and the consideration thereof by this court, an order was entered that said petitioner be released from said hospital for mental diseases, for the reason that the court found from the evidence submitted that he was, at the date of the making of said order, as well as at the time of the filing of said petition, sane. The order of release was entered pursuant to stipulation of respective counsel that this court, upon reaching a conclusion as to the mental condition of said Bain, make its order, and the written opinion be filed later.

At the hearing held before the said referee six doctors were called and testified, and the answers of each to direct questions as to their several opinions concerning the sanity of said Bain were as follows:

Dr. Frederick M. Anderson testified that he made an examination of petitioner on the 9th day of November 1939, and stated: "I found no evidence of insanity at the time."

Dr. James Thom was asked as to his opinion, and answered:

"A. I couldn't determine that he was insane.

"Q. Then you do feel that he was sane at the time? A. Yes, sir."

The following questions were propounded to Dr. Edward Everett Hamer, and the following answers given:

"Q. From your examination of Mr. Bain * * * November 17th, were you able to form an opinion as to his sanity or insanity at the time? A. I believed from my examination last Friday that he was not insane. Today I am more firmly convinced that he is not. * * * I believed he was not, and now I am thoroughly convinced he is not."

Dr. Arthur E. Landers testified that the last twelve and a half years he has been on the staff at the Nevada state hospital for mental diseases; that he made mental examinations of petitioner at different times. He was asked the following questions and gave the following answers:

"Q. From the examinations that you have made of the petitioner here, as you have detailed in evidence, and based upon what you have observed in connection with the petitioner, the questions you have propounded to him, the history of his trouble as learned from Mr. Bain, would you state at this time, in your opinion, whether Mr. Bain is now perfectly sane? A. I will say that Mr. Bain is not insane, but that he had a paranoiac tendency and still has that tendency."

Dr. Albert R. DaCosta was examined as follows:

"Q. * * * In your opinion is Mr. Bain at the present time a sane man? A. Mr. Bain in my opinion is a paranoiac at the present time, but without being active at the present moment.

"Q. * * * Can you say whether the paranoiac condition of Mr. Bain is submerged? A. My answer is 'yes', that it is submerged at the present moment, * * * All medical authorities agree that a paranoiac was never cured. That has been my experience. That sooner or later, upon the proper conditions arising, it will recur."

Dr. James C. Ferrell, superintendent of the Nevada hospital for mental diseases, after detailing the examinations of petitioner that he had made, and his investigations, summed up his conclusions in the following statements:

"Q. Did you determine that he (Bain) was a' paranoiac? A. It was very suspicious, yes, of his being a paranoiac.

Q. Are you of that opinion now? A. Yes, sir, or I wouldn't be here."

Other evidence was submitted as to the actions of the petitioner since his commitment to the hospital for mental diseases, and the petitioner testified in his own behalf. The testimony given by the petitioner was clear and concise, with every indication that he had full possession of his mental faculties.

It will be noted that the strongest evidence as to the present insanity of petitioner is that he is a paranoiac or has paranoiac tendencies. The definition of paranoia upon which the experts seemed to agree is: "a psychosis in which a patient builds up a set of delusions, which in most cases are delusions of persecution." Some of the experts enlarged upon the definition, saying: "There is first a beginning, second a delusion of persecution, and finally delusions of grandeur, egotism and self-importance."

The jury evidently believed that the petitioner was suffering from some such a mental disorder at the time of the commission of the assault with which he was charged. But it is evident that his mind had cleared at the time of the examination had before the referee. It seems the only question in the minds of some of the doctors was that there may, under certain conditions, be a recurrence of mental derangement. It became and is the duty of this court to determine whether that doubt is of sufficient weight to justify the court in ordering the retention of a sane man in a mental institution for a term which might extend throughout the remainder of his natural life, because, in the opinion of some of the doctors, the disease with which they say he suffers is incurable. The same contention could be made twenty years from now with the same force as it is now urged, should petitioner live that long.

We think the rights of this individual and the remoteness of his ever again becoming a menace to society strongly favor his release.

A reading of the transcript of the evidence at the trial discloses that petitioner and his wife were divorced, and that the custody of the children of the parties was awarded to the wife, with the exception of a sixteen-year-old girl who chose to remain with her father. Some of the children were and are of tender age, and the environment in which they were living was deplorable, a condition such as would tend to undermine the physical and mental health of any man who entertained any love for his children, and a condition which petitioner endeavored to correct, but met with little success. We do not think it would serve any good purpose to detail that evidence here. Much of those conditions was known to the petitioner, and, as we say, they were sufficient to create a mental state such as petitioner was found to be suffering from. By the intervention of the courts, the children have been placed in suitable surroundings, where they will have an opportunity to receive proper

teaching and care and be properly fed and clothed. These changed conditions are known to the petitioner, and have made a decided improvement in both his mental and physical well-being. It is indeed improbable that he will ever again he called upon to undergo such mental and physical torture as was his lot for some time prior to the alleged assault. This improbability of his being again subjected to such conditions renders remote indeed the fear that the paranoiac condition, which some of the experts say is present but submerged, will ever again assert itself. We at least felt that such contingency was sufficiently remote to justify us in ordering his release.

For the reasons given, the order heretofore made directing the release of petitioner from the Nevada hospital for mental diseases will stand.